UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-364-JBC

TERESA FELTNER,                                                                         PLAINTIFF,

V.                            MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                  DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") (DE 8, 9). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I. Overview of the Process

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

1

adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

At the time of the alleged disability onset date, the plaintiff was a thirty-four-year-old female with a high school education and cosmetology training. AR 24. She alleges disability beginning on September 1, 2002 due to post-traumatic stress

disorder, depression, panic attacks, non-union odontoid, insomnia, and degenerative disc disease in the lumbar and cervical spine. AR 43. The plaintiff filed her claim for DIB and SSI on March 31, 2004, which was denied initially and on reconsideration. AR 17. After a hearing held on January 26, 2006, Administrative Law Judge ("ALJ") Don C. Paris determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 17. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 19. At Step 2, the ALJ found that the plaintiff had severe impairments of degenerative disc disease of the lumbosacral spine with chronic low back pain, degenerative joint disease of the cervical spine with chronic pain, and anxiety/depression. AR 19. The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. AR 22. At Step 4, the ALJ found the plaintiff unable to perform past relevant work. AR 24. Finally, at Step 5 the ALJ found that with the plaintiff's residual functional capacity ("RFC"), jobs that the plaintiff can perform exist in a significant number in the national economy, and the ALJ therefore denied the plaintiff's claims for DIB and SSI. AR 24, 25. The plaintiff appealed to the Appeals Council, her appeal was denied, and she commenced this action.

**III. Legal Analysis**

The plaintiff argues the ALJ lacked a sufficient basis for rejecting the opinions of Dr. Lester, the plaintiff's long-time treating physician; Dr. Bean, a

neurosurgical specialist; and Dr. Crum, a consultative physician. The plaintiff's complaint seems to focus on these doctors' opinions regarding her neck pain.  An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  If a medical opinion of a treating physician is not contradicted, it is entitled to complete deference. *Cohen v. Sec'y of Dept. of Health and Human Servs,* 964 F.2d 524, 528 (6th Cir. 1992).  If the opinion of a treating source is not accorded controlling weight, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion.  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).  An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings, but he must give good reasons for the weight assigned to the treating source's opinions.  20 C.F.R. § 404.1527(d)(2); *Wilson*, 378 F.3d at 544.  Further, the opinion of a consulting physician is not entitled to the deference due the opinion of a treating physician. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

    The plaintiff's treating physician, Dr. William Lester, M.D., has treated the

plaintiff since 2001 for her chronic neck pain.  In a letter dated March 11, 2005, he stated that the plaintiff's "pain is exacerbated when using her arms for even short periods of time, lifting over 5 to 6 lbs. on an occasional basis, [and] moving her neck up and down or from side to side."  AR 222.  Dr. Lester also opined the plaintiff has been disabled since September 2002.  *Id.*  First, an opinion that the plaintiff is disabled is not a medical opinion; instead, it is an issue reserved to the commissioner because it is a finding that is dispositive of a case.  20 C.F.R. §404.1527(e), §416.927(e).  Second, the ALJ's opinion clearly addresses certain portions of Dr. Lester's treatment records that fail to support his assessment of disability; thus, the ALJ complied with the regulation requiring him to articulate good reasons for rejecting the treating source's opinion.  Social Security Ruling 96-2p.  The ALJ found that the doctor's opinion was inconsistent with his own treatment notes, specifically with the fitness-for-duty evaluation in August 2003.[1]  AR 20.

A review of the record further supports the ALJ's conclusion to reject Dr. Lester's 2005 assessment.  *See Heston v. Comm'r of Social Security,* 245 F.3d 528 (6th Cir. 2001)(court may review evidence in record, regardless of whether

---

[1] The ALJ stated that the doctor "performed a fitness for duty evaluation on 08/08/03 indicating a sedentary exertional limit with twisting and squatting within normal limits.  Standing ranges of motion crouch to knee and knee to knee were within normal limits. [The plaintiff] could occasionally or infrequently lift (from waist to shoulder level, floor to waist, and floor to shoulder) 10 pounds and bilaterally carry 10 pounds 100 feet or less.  This does not equate to his later finding that [the plaintiff] is disabled."  AR 20.

cited by the ALJ). Dr. Lester's own treatment records contain few objective findings of deterioration in the plaintiff's condition that would support the difference between the degree of limitation in 2005 and his 2003 evaluation. For instance, the doctor opined in August 2003 that the plaintiff could lift ten pounds (AR 231) when his records contained various notations regarding the plaintiff's chronic neck pain; yet in 2005 he opined that the plaintiff is disabled (AR 222) when his 2004 and 2005 medical records only occasionally mention the plaintiff's neck pain. *See e.g.* AR 242 - 248 (doctor noting neck pain in impression in records from 11/1/02 to 5/30/03)*;* AR 224, 254-61 (doctor not even specifically noting neck pain in his impression in various records dating from 7/30/04 to 1/11/06). Additionally, Dr. Lester received multiple letters from Dr. Bean concerning the plaintiff's non-united odontoid before the 2003 assessment.[2]  Further, the August 2003 evaluation was completed after Dr. Lester requested a neurosurgical consultation with Dr. Tibbs.[3]  Both Dr. Bean and Dr. Tibbs diagnosed the plaintiff

---

[2] On December 17, 2002, Dr. Bean stated that the plaintiff's MRI scan showed a non-united odontoid, yet he recommended conservative treatment, realizing that there was only a mild degree of instability. AR 140. The ALJ noted this letter in his opinion. AR 20. On January 21, 2003, Dr. Bean recommended a cervical approach to deal with the plaintiff's pain, "probably a posterior cervico-occipital fusion from the occiput to C3." AR 139. Finally, on February 4, 2003, Dr. Bean opined "it may be feasible to watch and wait with [the surgery for stabilization]. If symptoms, particularly if pain worsens, we will decide on posterior cervical fusion. [The plaintiff] will let me know if the symptoms worsen significantly." AR 137.

[3] On March 20, 2003, after a review of an MRI scan, Dr. Tibbs opined that the plaintiff has odointoidosis but he doubted fusion would benefit. AR 263.

with the non-union of the odontoid, which Dr. Lester used in his August 2003 evaluation. In fact, at that time, Dr. Lester merely limited the plaintiff's ability to work, stating "the abilities demonstrated during [the plaintiff's] evaluation do not constitute returning to work in the *production* setting." AR 231 (emphasis added). Yet, Dr. Lester relied on this same affliction to support his statement that the plaintiff is disabled.[4] The plaintiff points to no medical evidence after 2003 which supports Dr. Lester's 2005 opinion of disability.

The plaintiff contends that the ALJ erred in finding Dr. Lester's opinion inconsistent with the opinion of Dr. Bean. The ALJ specifically noted that Dr. Lester's 2005 opinion that the plaintiff has been disabled since September 2002 was "inconsistent with the medical evidence of record, particularly Dr. Bean's statements." AR 20. As discussed above, Dr. Lester found the plaintiff to be only limited in her capabilities in August 2003 after reviewing Dr. Bean's findings, which is inconsistent with his opinion that she was disabled in 2002. The timing of Dr. Lester's findings lend support to the ALJ's decision to reject Dr. Lester's 2005 opinion. Further, the ALJ's finding that the plaintiff has the RFC to perform sedentary exertional work falls in line with Dr. Lester's limited 2003 assessment, which is also supported by the record. Though a treating physician's opinions are ordinarily given significant deference, the court finds that the ALJ did not err in

---

[4]Specifically, Dr. Lester states the plaintiff 'has an unstable cervical spine with non-union of the odontoid @ the C 2 vertebra. . . . I cannot see her performing in any type of substantial gainful employment. She has been disabled, in my opinion, since September 2002." AR 222.

7

rejecting Dr. Lester's opinion on the ground that it was inconsistent with his own medical records.

The plaintiff also argues the ALJ improperly gave partial weight to the opinion of Dr. Crum, a consultative physician. Dr. Crum stated that the plaintiff described "severe restriction of activity due to an inability to move her head and neck and intolerance of any lifting or motion. Her physical examination is consistent with this story and restriction of activity." AR 165. The ALJ explicitly noted that he took this portion of Dr. Crum's opinion into consideration in his RFC finding. AR. 23. Also, the ALJ gave more weight to the opinions of the plaintiff's doctors and to Dr. Crum, as exhibited by his RFC finding. After a review of the record, the reviewing state agency physicians found that the plaintiff retained the RFC to perform medium work activity. AR 171-77, 213-21. The ALJ clearly rejected these assessments because he found the plaintiff retained the RFC for only sedentary exertional work.[5] For these reasons, the court finds the ALJ's RFC finding and ultimate opinion that the plaintiff is not disabled as defined in the Social

---

[5]The court notes that although the ALJ found that the plaintiff had the residual functional capacity to "no more than frequently flex or extend the head from side to side" (AR 22), the vocational expert ("VE") was specifically asked about the plaintiff's limited mobility of her head. Specifically, the plaintiff's representative asked "if an individual has very limited mobility of the head, the ability to move the neck from side to side or up and down, how would that affect the jobs that [the VE] mentioned?" AR 309. The VE responded that the jobs listed were chosen for that reason, because they are directed toward one place and there is no miscellaneous movement to the head. AR 309-10. Thus, even if the ALJ erred in finding the plaintiff could move her head frequently, such error would be harmless as the VE testified that there were jobs available that would accommodate limited movement.

Security Act were supported by substantial evidence in the record.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 8) is **DENIED**.

Signed on March 26, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY